CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 12 2019

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

MELISSA L. BOONE,

Plaintiff,

v.

ANDREW SAUL,
Commissioner of Social Security,[1]

Defendant.

Civil Action No. 7:18CV00223

**MEMORANDUM OPINION**

By: Hon. Glen E. Conrad
Senior United States District Judge

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is established pursuant to 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Melissa L. Boone, was born on December 29, 1967. She graduated from high school and attended college for six to eight months. (Tr. 55–56). Ms. Boone has previously worked as a cashier, sales associate, and housekeeper. She last worked on a regular and sustained basis on June 30, 2012. (Tr. 43). On February 9, 2014, Ms. Boone filed an application for a

[1] Andrew Saul is now the Commissioner of Social Security, and he is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d); see also 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

period of disability and disability insurance benefits. In filing her current claim, Ms. Boone alleged that she became disabled for all forms of substantial gainful employment on June 30, 2011, due to medullary sponge kidney, irritable bowel syndrome, hypertension, migraine headaches, nerve damage in her hands, fatigue, diffuse body pain, depression, and anxiety. (Tr. 218, 265). At the time of an administrative hearing on June 16, 2017, the plaintiff amended her application so as to reflect an alleged disability onset date of June 30, 2012, which was the date that she stopped working as a cashier. (Tr. 43). Ms. Boone now maintains that she has remained disabled to the present time. The record reveals that Ms. Boone met the insured status requirements of the Act through the first quarter of 2015 but not thereafter. See generally 42 U.S.C. §§ 416(i) and 423(a). Consequently, the plaintiff is entitled to a period of disability and disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before March 31, 2015, her date last insured.

Ms. Boone's application was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated July 17, 2017, the Law Judge also determined, after applying the five-step sequential evaluation process, that Ms. Boone was not disabled on or before her date last insured.[2] See 20 C.F.R. § 404.1520. The Law Judge found that Ms. Boone suffered from several severe impairments through that date, including irritable bowel syndrome, nephrolithiasis medullary sponge kidney, gastroesophageal reflex disease, chronic obstructive pulmonary disease, hyperlipidemia, headaches, and migraines, but that these impairments did not, either individually

[2] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work in the national economy. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps, after which the burden shifts to the Commissioner to prove the fifth step. Thomas v. Berryhill, 916 F.3d 307, 310 (4th Cir. 2019). If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. 20 C.F.R. § 404.1520.

or in combination, meet or medically equal the requirements of a listed impairment.[3] (Tr. 25–26).

The Law Judge then assessed Ms. Boone's residual functional capacity as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. [§] 404.1567(a)[4] except the claimant can climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and never crawl. The claimant can frequently work at unprotected heights, moving mechanical parts, in humidity and wetness, in dust, odors, fumes and pulmonary irritants, in extreme cold, in extreme heat, and in vibration.

(Tr. 27). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Ms. Boone was unable to perform any of her past relevant work through the date last insured. (Tr. 29). However, the Law Judge found that Ms. Boone retained the capacity to perform other work roles existing in significant number in the national economy. (Tr. 30). Accordingly, the Law Judge concluded that Ms. Boone was not disabled at any time from the alleged onset date through the date last insured, and that she is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Boone has now appealed to this court.

---

[3] Although plaintiff was treated for depression and anxiety during the relevant period, the Law Judge found that any mental impairment was non-severe. (Tr. 26). The Law Judge also found that the plaintiff's "alleged carpal tunnel syndrome, multiple sclerosis and peripheral neuropathy [were] non-medically determinable impairment[s] because there [was] no documentation of diagnosis or treatment of these conditions." (Tr. 26).

[4] "Sedentary work" is defined in the regulations as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(b).

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision must be affirmed. Although Ms. Boone has a long history of multiple physical and mental impairments, substantial evidence supports the Law Judge's determination that she retained the residual functional capacity to perform a limited range of sedentary work through her date last insured.

The record reveals that in November of 2011, approximately eight months prior to the alleged onset date of disability, Ms. Boone presented to the emergency room at Carilion New River Valley Medical Center with complaints of sore throat, ear pain, dysuria, and hematuria. (Tr. 352). A review of systems revealed no malaise, fatigue, muscle aches, or joint pain, and her musculoskeletal, neurological, and psychological examinations were normal. (Tr. 353). The attending physician noted that there was no obvious urinary tract infection and that plaintiff's primary care physician was addressing the hematuria. (Tr. 357–39). Ms. Boone was advised to stop smoking immediately and to see an ENT physician if her upper respiratory symptoms did not improve. (Tr. 355).

Ms. Boone presented to her primary care physician, Dr. Garry Kuiken, with various complaints in 2011 and 2012. On several occasions, Dr. Kuiken issued notes excusing plaintiff from work for short periods ranging from one day to two weeks (Tr. 1410–12). On June 18, 2012, just before her alleged onset date, Ms. Boone reported that she wanted to quit her job so that she could receive Medicaid again. (Tr. 663).

In September of 2012, Ms. Boone presented to the emergency room with acute nephrolithiasis. (Tr. 607). She received follow-up treatment at Urology Associates of NRV. On October 5, 2012, plaintiff reported that she was "doing well." (Tr. 606). The diagnostic assessment included distal ureteral stone, medullary sponge kidney, and nephrolithiasis. Plaintiff was advised to return for another evaluation in six months to a year. (Tr. 606).

On April 29, 2013, Ms. Boone presented to Christiansburg Gastroenterology with complaints of abdominal cramping and diarrhea. (Tr. 376). She was examined by Dr. Mark Ringold, who noted that plaintiff was in "no distress" and reported no fatigue, weakness, myalgia, back pain, or joint pain. (Tr. 376). Plaintiff's abdomen was found to be soft, nontender, and nondistended; she exhibited normal range of motion and no musculoskeletal tenderness; and her physical examination findings were otherwise normal. (Tr. 376). Dr. Ringold diagnosed plaintiff with diarrhea and predominant irritable bowel syndrome, for which he prescribed medication. (Tr. 377).

Ms. Boone returned to Christiansburg Gastroenterology for follow-up evaluations on July 29, 2013 and September 24, 2013. Although plaintiff continued to experience diarrhea, the examination notes indicate that it was "better controlled." (Tr. 386). Physical examination findings in September were within normal limits, and a biopsy showed no evidence of celiac disease. (Tr. 386). A review of systems revealed no fatigue, weakness, myalgia, back pain, or

joint pain, and plaintiff exhibited normal range of motion and no musculoskeletal tenderness. (Tr. 386).

Ms. Boone's diarrhea remained under control in December of 2013, but she required treatment for hemorrhoids. (Tr. 390–391). She ultimately underwent a complex Ferguson hemorrhoidectomy on December 16, 2013. (Tr. 441).

In March of 2014, plaintiff presented to Community Health Center of the New River Valley, where she was examined by Dr. Abraham Hardee. Plaintiff complained of head congestion, sinus drainage, and muscle aches. She denied having any joint paint or difficulties with balance, coordination, or gait. (Tr. 784). On physical examination, her throat and lungs were clear, and she exhibited full range of motion. (Tr. 785). The diagnostic assessment included allergic rhinitis, hypertension, tobacco use disorder, hyperlipidemia, muscle spasms, and depressive disorder. (Tr. 785). During follow-up evaluations in May and June of 2014, plaintiff reported experiencing joint pain and a depressed mood for which Dr. Hardee prescribed Cymbalta. (Tr. 791).

On April 10, 2014, Ms. Boone was admitted to the hospital after being diagnosed with kidney stones. The following day, she underwent a bilateral cystoureteropyeloscopy with stone basket manipulation, stone laser lithotripsy, and stent placement. (Tr. 518). At a follow-up appointment two weeks later, plaintiff reported that she was feeling well overall. (Tr. 597). Her range of motion was grossly intact, her abdomen was not distended, her mood and affect were normal, and no motor dysfunction was observed. (Tr. 598).

On June 2, 2014, an MRI of plaintiff's brain revealed "[s]cattered mild changes of gliosis within the deep white matter." (Tr. 507). The reviewing clinician noted that such findings "can

be seen in demyelinating disorders like multiple sclerosis." (Tr. 507). Plaintiff's primary care physician noted that white matter changes can also result from smoking. (Tr. 641).

Ms. Boone was referred to Dr. Douglas Jeffrey, a neurologist who specializes in multiple sclerosis. On July 18, 2014, Dr. Jeffrey noted that plaintiff's MRI results were "suspicious," but that they were "not abnormal enough . . . to allow for diagnosis of multiple sclerosis." (Tr. 922). Dr. Jeffrey also observed that "there could be a number of other etiologies which could give this type of appearance on [an] MRI scan." (Tr. 922). Dr. Jeffrey requested an MRI of the cervical spine, which was performed on August 13, 2014. The results of that MRI revealed only mild degenerative changes and no white matter abnormalities. (Tr. 920, 1033).

During a subsequent examination on August 18, 2014, plaintiff reported "some depression" and decreased memory. (Tr. 920). However, her mental status evaluation was normal. Dr. Jeffrey noted that Ms. Boone "was alert and oriented times 3," that "[n]aming, repetitions, and commands were intact," that her "[a]ttention and affect were normal," and that her "[c]ognition appeared intact." (Tr. 921). On motor examination, Ms. Boone "was able to generate full power in both upper and lower extremities in all muscle groups proximally and distally," and her "gait was normal but she had difficulty doing a tandem gait." (Tr. 921). Dr. Jeffrey noted that plaintiff's "[s]ensory examination was intact to touch and temperature throughout." (Tr. 921). "Vibration was diminished in the left more so than the right lower extremity," and plaintiff "sway[ed] on Romberg testing but did not fall." (Tr. 921). With respect to plaintiff's reflexes, Dr. Jeffrey observed that they "were 2+ and symmetric in the triceps, biceps, and brachial radialis," and that plaintiff "was clonic at the left knee and 3+ at the right knee." (Tr. 921). Ultimately, Dr. Jeffrey assessed plaintiff with "possible multiple sclerosis." (Tr. 921).

On October 3, 2014, Ms. Boone presented to Carilion Clinic Urology with recurrent kidney stones. (Tr. 858). Plaintiff complained of flank pain, but her abdominal, musculoskeletal, neurological, and psychiatric examination findings were normal. (Tr. 861). During a follow-up appointment in December of 2014, plaintiff's kidney stones were stable, she exhibited normal range of motion and no abdominal tenderness, and her mood, affect, behavior, and judgment were normal. (Tr. 871).

In January of 2015, Ms. Boone presented to Dr. Kelli Linick with complaints of urinary pain and discomfort. Dr. Linick noted that plaintiff's mood and affect were normal, and that she interacted appropriately. Dr. Linick diagnosed plaintiff with dysuria, urinary infrequency, and hematuria, which was likely related to kidney stones. (Tr. 947).

Plaintiff returned to Dr. Jeffrey's multiple sclerosis clinic on February 23, 2015. Plaintiff's mental status evaluation was normal, and the physical examination findings were largely unchanged from the previous visit. Dr. Jeffrey continued to diagnose plaintiff with possible multiple sclerosis. (Tr. 926).

In March of 2015, Howard S. Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form as part of the disability determination at the reconsideration level. Based on his review of the medical evidence, Dr. Leizer determined that Ms. Boone did not have a severe mental impairment. Although plaintiff had been diagnosed with depression by her primary care physician and reported experiencing memory problems, Dr. Leizer noted that "her mental status exams have been normal, including [the] most recent exam, which indicated that she had normal attention, concentration, intact naming, repetitions, and commands, and intact cognition." (Tr. 159). Dr. Leizer also found that any resulting limitations were mild in nature and did not significantly affect Ms. Boone's ability to perform basic work activities. (Tr. 159).

That same month, Dr. Lewis Singer, a state agency physician, completed a physical residual functional capacity assessment. Dr. Singer opined that plaintiff was capable of meeting the lifting requirements for sedentary work, that she could stand and/or walk (with normal breaks) for a total of two hours in an eight-hour workday, and that she could sit (with normal breaks) for a total of six hours during an eight-hour workday. (Tr. 160). Dr. Singer also found that plaintiff had occasional postural limitations and some environmental limitations. (Tr. 161). Dr. Singer noted that the identified limitations accounted for Ms. Boone's "possible diagnosis of multiple sclerosis (more testing needed), fatigue, difficult tandem gait, diminished vibration L>R, swaying on Romberg testing, [and] clonic left knee." (Tr. 161).

Ms. Boone underwent a second MRI of the brain on July 11, 2015, after her insured status expired. The testing revealed no significant interval changes from the previous MRI and no evidence of new or enhanced lesions. (Tr. 1022). Dr. Jeffrey subsequently observed that the results of the MRI were "not sufficient by which to make a diagnosis of multiple sclerosis." (Tr. 1005). During a follow-up examination on November 23, 2015, Dr. Jeffrey noted that plaintiff's appearance, mental status, attention, and affect were normal, that she was able to generate full power in both upper and lower extremities in all muscle groups bilaterally and distally, and that her "[g]ait was normal but she had difficulty doing a tandem gait." (Tr. 1006). Sensory and reflex examination findings remained the same.

Ms. Boone returned to Carilion Urology on December 22, 2015. She reported that she was "doing well" and had no localized flank pain. (Tr. 1141–42). Plaintiff's physical examination findings were within normal limits. Likewise, her mood, affect, behavior, judgment, and thought content were normal. (Tr. 1144).

At the administrative hearing held on June 16, 2017, Ms. Boone testified that she stopped working in June of 2002 because of issues with allergies, irritable bowel syndrome, and kidney stones. (Tr. 61). Plaintiff also testified that from her alleged onset date through her date last insured, she experienced depression, "all over body pain," migraine headaches, fatigue, pain and numbness in her hands, anxiety attacks, panic attacks, and numbness in her legs. (Tr. 63–72). Ms. Boone estimated that she could only sit for between thirty and forty minutes before she would need to stand and stretch, and that she could only stand for between thirty and forty minutes before she would need to change positions. (Tr. 75–76). Plaintiff also testified that she would need to lie down three or four times a day for approximately an hour. (Tr. 77). Ms. Boone further testified that she experienced memory problems during the relevant time period and that she could not concentrate "at all." (Tr. 81).

After considering all of the evidence of record, the Law Judge found that Ms. Boone's impairments were not so severe as to prevent performance of certain sedentary work roles through her date last insured. In making this determination, the Law Judge found that plaintiff's allegations of totally disabling physical and mental limitations during the relevant time period were inconsistent with the clinical findings and other evidence in the record. (Tr. 27–29). The Law Judge emphasized that plaintiff's impairments were adequately managed with prescribed treatment and medication. (Tr. 28–29). Although plaintiff complained of "all over body pain," the Law Judge noted that her treatment "never included physical therapy or a pain management program," and that physical examinations revealed "general benign findings," including normal range of motion, no edema or tenderness, and full strength in the upper and lower extremities. (Tr. 29).

In assessing plaintiff's residual functional capacity, the Law Judge assigned "great weight" to Dr. Singer's opinion that Ms. Boone could perform sedentary work with certain postural and environmental limitations. (Tr. 29). The Law Judge ultimately determined that the assessed residual functional capacity adequately accommodated plaintiff's "history of episodic fatigue and weakness, gastrointestinal issues, urinary issues, respiratory issues, headaches and migraines," and that the evidence of record did not support the more extreme limitations to which Ms. Boone testified. (Tr. 29).

On appeal to this court, Ms. Boone, through counsel, makes three categories of arguments. First, plaintiff argues that the Law Judge failed to properly consider all of her impairments. In particular, Ms. Boone contends that the Law Judge erred in determining that her depression and episodic anxiety were non-severe impairments, and by failing to identify multiple sclerosis, peripheral neuropathy, and fibromyalgia as medically determinable and severe impairments.

At the second step of the sequential evaluation process, the Law Judge considers the medical severity of a claimant's impairment(s). 20 C.F.R. § 404.1520(a)(4)(ii). If a claimant did not have a severe impairment or combination of impairments prior to the date last insured, the claimant must be found not disabled at step two, and the sequential evaluation process need not progress further. Id § 404.1520(c). The regulations provide that a physical or mental impairment "must be established by objective medical evidence from an acceptable medical source." Id. § 404.1521. An impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." Id. § 404.1522. Additionally, to be considered "severe," an impairment must last, or be expected to last, for a continuous period of at least 12 months. Id. §§ 404.1509, 1520(a)(4)(ii).

In this case, the Law Judge acknowledged that Ms. Boone was diagnosed with depression and episodic anxiety prior to her date last insured. (Tr. 26). However, the Law Judge concluded that these impairments did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and [were] therefore non-severe." (Tr. 25). In making this finding, the Law Judge considered the four functional areas set forth in 20 C.F.R. § 1520a, and found that Ms. Boone's limitations in each area of functioning were either mild or nonexistent. (Tr. 25); see also 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]"). Although Ms. Boone reported memory problems, the Law Judge noted that mental status evaluations throughout the record revealed "normal findings, including normal attention, concentration, intact naming, repetition and commands, and intact cognition." (Tr. 26). The Law Judge also observed that treatment for plaintiff's mental health issues had been "fairly conservative including only medications and no formal treatment by a mental health provider." (Tr. 26). Based on this and other evidence of record, the Law Judge concluded that any mental impairment was non-severe through the date last insured. (Tr. 26).

Upon review of the record, the court is convinced that the Law Judge's assessment of Ms. Boone's mental impairments is supported by substantial evidence, including the examination records from treating physicians and the March 2015 report from Dr. Leizer, who likewise concluded that plaintiff's mental impairments were non-severe. As noted by Dr. Leizer and the Law Judge, mental status evaluations during the relevant period repeatedly revealed normal findings. For instance, on July 18, 2014, August 18, 2014, and February 23, 2015, Dr. Jeffrey noted that Ms. Boone was alert and fully oriented; that naming, repetitions, and commands were

intact; that her attention and concentration were normal; and that her cognition appeared intact. (Tr. 921, 923, 926). Examination reports from other clinicians during the same time period contain substantially similar findings. (Tr. 598, 602, 861, 871, 881). In short, the court believes that the Law Judge's assessment of plaintiff's mental impairments is well supported by the record.

Ms. Boone also assigns error to the Law Judge's assessment of her alleged multiple sclerosis and peripheral neuropathy, and to the Law Judge's failure to identify fibromyalgia as a determinable and severe impairment. As indicated above, however, Ms. Boone has not been definitively diagnosed with multiple sclerosis, and MRI scans have proven inconclusive. (Tr. 1005) ("Her MRI scan does show multiple small white matter lesions but it is not sufficient by which to make a diagnosis of multiple sclerosis."); (Tr. 922) ("[T]here could be a number of other etiologies which could give this type of appearance on [the] MRI scan."). Likewise, plaintiff was not diagnosed with possible fibromyalgia until June of 2016, more than a year after her insured status expired, and she does not cite to any earlier clinical findings or objective evidence establishing the existence of such impairment. Accordingly, the court finds no error in this regard.

Plaintiff correctly notes that Dr. Singer, who reviewed the record at the request of the state agency, identified peripheral neuropathy as one plaintiff's severe medical impairments. (Tr. 158). However, despite this impairment and a possible diagnosis of multiple sclerosis, Dr. Singer determined that plaintiff was capable of performing a limited range of sedentary work. (Tr. 158–162). The Law Judge fully considered Dr. Singer's report and the limitations noted therein in assessing plaintiff's residual functional capacity. Consequently, any error in declining to classify peripheral neuropathy as a severe impairment was harmless. See, e.g., Fry v. Berryhill, 721 F. App'x 714, 715 (9th Cir. 2018) (holding that any error in failing to consider all of the

claimant's impairments at step two was harmless because the Law Judge properly considered all of the claimant's limitations in assessing his residual functional capacity); Carrico v. Colvin, No. 6:14-cv-00032, 2016 U.S. Dist. LEXIS 33597, at *8 (W.D. Va. Mar. 16, 2016) (explaining that "any error by the ALJ at step two is harmless if the ALJ considers the effects of all of [the claimant's] impairments in the subsequent steps") (collecting cases).

Ms. Boone next argues that the Law Judge failed to conduct a proper function-by-function analysis in assessing her residual capacity. In particular, Ms. Boone contends that the Law Judge failed to make sufficient findings regarding her alleged "inability to maintain a static work posture, her need to lie down during the day, or her rate of unacceptable absenteeism." Pl.'s Br. 13, Dkt. No. 14.

Upon review of the record and applicable caselaw, the court finds this argument unpersuasive. Although guidelines from the Social Security Administration instruct the Law Judge to take a "function-by-function" approach to determining a claimant's residual functional capacity, SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996), the United States Court of Appeals for the Fourth Circuit has "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). Instead, the Court agreed with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). In this case, it is clear from the Law Judge's decision that he considered all of Ms. Boone's claimed limitations, including those described during the administrative hearing, but found that such limitations were inconsistent with the findings on physical examination prior to her date last insured, the

conservative nature of the treatment provided, and the plaintiff's own statements to treating physicians. (Tr. 27–29). Consequently, the court finds no error in the Law Judge's assessment of plaintiff's residual functional capacity and concludes that the assessment is supported by substantial evidence.

In her final argument, Ms. Booth contends that the Law Judge's assessment of her testimony and subjective complaints is not supported by substantial evidence. While Ms. Booth testified at the administrative hearing that she experienced totally disabling pain, numbness, and fatigue prior her date last insured, the Law Judge found that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record." (Tr. 28). The Law Judge emphasized that the plaintiff's pain and discomfort were managed with relatively conservative treatment measures, and that her treatment "never included physical therapy or a pain management program." (Tr. 29). The Law Judge also noted that the clinical evaluations discussed above revealed generally benign findings, and that plaintiff was consistently found to have normal range of motion, no edema, no tenderness, full strength in the upper and lower extremities, clear lungs, and neurologically intact functioning. (Tr. 29).

Upon review of the record, the court is unable to discern any error in the Law Judge's credibility findings. The court agrees that Ms. Boone's allegations of totally disabling symptoms are inconsistent with the complaints documented in the treatment records prior to the date last insured, the objective findings on examination, and the relatively conservative treatment measures provided for pain and discomfort. Thus, the court is satisfied that substantial evidence supports the Law Judge's decision not to fully credit Ms. Boone's testimony.

In affirming the Commissioner's final decision, the court does not suggest that Ms. Boone was free of all pain and discomfort during the relevant time period. Indeed, the medical evidence confirms that plaintiff suffered from a combination of impairments that could be expected to result in subjective limitations. However, the record simply does not include medical evidence that is consistent with totally disabling symptomatology prior to the expiration of plaintiff's insured status. Moreover, none of plaintiff's treating physicians indicated that plaintiff had more significant functional limitations than those identified by the Law Judge. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant disabled. See Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996). It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Ms. Boone's claim for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 12th day of August, 2019.

[signature]

Senior United States District Judge